UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

––––––

JOHN EDWARD SCOTT,

                     Plaintiff,                    Case No. 1:11-cv-752

v.                                    Honorable Robert Holmes Bell

JEFFREY R. FINK,

                     Defendant.

_____/

## OPINION

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.  The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. § 1915(e)(2).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.      Factual allegations

Plaintiff John Edward Scott presently is incarcerated at the Ryan Correctional Facility, Plaintiff was convicted by a jury of first-degree criminal sexual conduct at a trial in which the victim identified Plaintiff as the attacker.  He was sentenced by the Kalamazoo County Circuit Court on July 28, 1980, to a term of life in prison.  In his civil rights action, Plaintiff sues the Kalamazoo County Prosecutor Jeffrey Fink.

Plaintiff brings the instant action to obtain fingerprint evidence from the crime scene. According to the complaint, the victim testified at trial that immediately after she was sexually assaulted, the assailant went to the refrigerator, opened it up, and then opened the vegetable bin. (Compl. ¶ 13, docket #1.)  An evidence technician testified that he was able to retrieve fingerprint evidence from the handle of the victim's freezer and that these prints were "sufficient for identification."  (*Id.* at ¶ 14.)  Apparently, the prints from the freezer were never tested (*id.* at ¶ 17), and Plaintiff asserts that he "was definitively excluded as the depositor of the fingerprints in question" (*id.* at ¶ 15).  Plaintiff contends that fingerprint identification technology has improved in the years since his conviction and that he is entitled to have the prints made available to him for processing in state and national fingerprint databases.

According to the state-court docket sheet, Plaintiff filed his first motion for relief from the judgment in his criminal action in July of 2000.  The motion was denied in October of that year.  The docket sheet also indicates that, in 2003, Plaintiff filed a motion seeking access to

evidence for DNA testing, presumably under MICH. COMP. LAWS § 770.16,[1] which was denied by the Kalamazoo County Circuit Court on January 8, 2003.

On June 17, 2011, Plaintiff filed a motion to compel the state prosecutor to produce the fingerprint evidence and/or to process it through state and national databases. The circuit court denied the motion on July 1, 2011. *See Michigan v. Scott*, No. 1979-4133-FY, Op. & Order (Kalamazoo County Cir. Ct. July 1, 2011) (attached to Plaintiff's complaint at docket #1-1, Page ID#13). The court noted that it had determined in an earlier opinion that the evidence in Plaintiff's case had been destroyed, and "[p]resumably the destroyed evidence would have included the fingerprints [Plaintiff] references." *Id.* at 2. The court further determined that, in the absence of specific authority allowing the Court to grant Plaintiff's request, the request would be construed as a motion for relief from judgment under MICH. CT. R. 6.500. The Court reasoned that Plaintiff could only pursue relief from judgment under part 6.508(D)(3) of the rule, because Plaintiff had already filed a previous motion for relief from judgment and he had not presented the issue regarding the fingerprint evidence on appeal. The court held that Plaintiff had not shown good cause for failing to raise the issue earlier, and had not shown actual prejudice because "determining the identity of the person who left the print in question would not exonerate Defendant." *See Scott*, Op. at 3.

Plaintiff asserts that the State of Michigan's refusal to turn over the fingerprint evidence violates his right to due process under the Fourteenth Amendment to the Constitution. For relief, Plaintiff seeks an injunction ordering the Kalamazoo County Prosecutor's Office and the

---

[1] Section 770.16 provides a means for convicted felons to petition the circuit court to order DNA testing of biological material identified during the investigation leading to the conviction.

Kalamazoo County Public Safety Department (who is not a party to the case), to process the fingerprint evidence through "state and national databases" or provide it to Plaintiff.  (Compl. at 7.)

II.      Jurisdictional bars – *Heck v. Humphrey* & *Rooker v. Feldman*

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  512 U.S. at 486-87 (citation omitted); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997).

In *Skinner v. Lynn*, ___ S. Ct. ___, 2011 WL 767703, at **8-10 (Mar. 7, 2011), the Supreme Court considered a § 1983 action by a state prisoner seeking post-conviction access to DNA evidence.  The Court determined that the plaintiff's action was not *Heck*-barred because success in the action would not necessarily result in the plaintiff's "immediate or speedier release" from prison.  *Id.* at *10 (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)).  The Court distinguished the untested DNA evidence at issue in that case from the sort of evidence that must be disclosed before trial under *Brady v. Maryland*, 373 U.S. 83 (1963).  *Brady* evidence is, by definition, exculpatory, whereas DNA testing "may yield exculpatory, incriminating, or inconclusive results . . . ."  *Id.* at *10.  In other words, even if the plaintiff hoped to use the DNA evidence to prove his actual innocence and overturn his conviction, the evidence would not necessarily be helpful for that purpose.  The holding in *Skinner* applies with equal force to the instant case.  The fingerprint evidence sought by Plaintiff is not, by definition, exculpatory.  Like the DNA testing at

- 4 -

issue in *Skinner*, fingerprint testing may yield incriminating or inconclusive results. Thus, Plaintiff's action is not *Heck*-barred because success in his action would not necessarily entail immediate or speedier release from prison.

The Court in *Skinner* also considered whether the plaintiff's action was barred by the *Rooker-Feldman* doctrine. *Skinner*, 2011 WL 767703, at *7; *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine precludes "cases brought by state-court losers . . . inviting district court review and rejection of [the state court's] judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The plaintiff in *Skinner* had unsuccessfully sought access to the DNA evidence in state court pursuant to a state statute providing post-conviction access to DNA evidence. In a separate federal action, the plaintiff claimed that the State's procedures were constitutionally defective. *Skinner*, 2011 WL 767703, at *6. Though the plaintiff in *Skinner* was a state–court loser seeking relief in federal court, the Supreme Court held that the *Rooker-Feldman* doctrine did not bar the action because the action did not invite federal court review of the state court's decision; rather, the federal action was an independent challenge to the constitutionality of the state statute. *Skinner*, 2011 WL 767703, at *7.

To the extent Plaintiff claims that Michigan's procedures for obtaining access to the evidence are constitutionally inadequate (*see* Compl. ¶¶ 7, 8, 17.), Plaintiff's action is not barred by the *Rooker-Feldman* doctrine. Under the logic of *Skinner*, Plaintiff's due process challenge is an independent action that does not invite this Court to review the state court's decision.

III.   Failure to state a claim

Even if Plaintiff's action is not barred, however, it fails to state a claim.  A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

- 6 -

a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that the State's denial of access to the fingerprint evidence violates his right to due process under the Fourteenth Amendment.  To establish a procedural due process violation, a petitioner must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006).

A "criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man."  *Dist. Attorney's Office v. Osborne*, 129 S. Ct. 2308, 2320 (2009).  In *Osborne*, a state prisoner brought a § 1983 action claiming that the State's refusal to provide evidence for DNA testing violated his right to due process.  *Id.* at 2314, 2319.  The Court in *Osborne* held that there is no freestanding due process right to obtain DNA evidence in the post-conviction setting.  *Id.* at 2322.  The holding in *Osborne* readily extends to the fingerprint evidence sought by Plaintiff.  In other words, if there is no substantive due process right to obtain potentially exculpatory DNA evidence following a conviction, it follows that Plaintiff does not have a free-standing right to obtain the fingerprint evidence at issue.

In the absence of a free-standing right to fingerprint evidence, Plaintiff's due-process claim hinges on whether he has a liberty interest created by state law.  *See id.* at 2319 (finding that an Alaskan statute allowing prisoners to use newly discovered evidence to establish innocence

created a liberty interest entitled to due-process protection).  Where a state has created a post-conviction right to access evidence, a prisoner has only a "limited interest" in the relief.  *Id.* at 2320.  States have "flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* at 2315.  "Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.*  In *Osborne*, the Court noted that Alaskan statutes provided a "right to be released on a sufficiently compelling showing of new evidence that establishes innocence." *Id.* at 2320.  The Court also noted that the State of Alaska provides for discovery in post-conviction proceedings, and its courts had specifically held that discovery was available to those seeking access to DNA testing. *Id.*  The Court determined that the procedures were adequate on their face. *Id.* at 2321.

The Kalamazoo County Circuit Court could not identify a specific right under Michigan law that would allow Plaintiff to obtain the fingerprint evidence for testing, and Plaintiff does not identify one in his complaint.  Consequently, the circuit court construed Plaintiff's motion to compel evidence as a motion for relief from judgment under MICH. CT. R. 6.502.  Petitioner apparently asserts that state procedures are inadequate because the rules provide that only motion for relief from judgment may be filed, *see* MICH CT. R 6.501(G)(1).  Another motion under Rule 6.500 may be filed, however, if the defendant raises a "claim of new evidence that was not discoverable before the first such motion." MICH. CT. R. 6.501(G)(2).  Moreover, though the circuit court referred to the single-motion rule, it nevertheless considered Plaintiff's second motion for relief on the merits.  Plaintiff does not identify other potential constitutional shortcomings in the procedures made available to him, and the Court discerns none.

- 8 -

Even if the State violated Plaintiff's right to due process, its actions appear to have been harmless in Plaintiff's case. The circuit court concluded that the fingerprint evidence could not prove Plaintiff's innocence in any event, and the allegations of the complaint support this conclusion. According to the complaint, the victim's assailant opened the door of the victim's *refrigerator* (Compl. ¶ 13). Plaintiff, however, seeks access to fingerprints taken from the handle of the victim's *freezer* (*Id.* at ¶ 14). Testimony attached to the complaint indicates that the refrigerator and freezer had two separate doors. (App'x to Compl., Page ID##18-19.) In other words, if Plaintiff claims that he is innocent, there is no indication that the fingerprints would be helpful for proving this innocence by identifying the real assailant. Indeed, the fingerprint evidence appears to be irrelevant. Thus, whatever limited interest Plaintiff may have in obtaining evidence after his conviction for the purpose of establishing his innocence, the State did not implicate that interest when it prevented him from obtaining the fingerprint evidence at issue in this case.

IV.  Res judicata

Finally, even if Plaintiff's claim were otherwise valid, the Court could not give Plaintiff the relief that he seeks. The state court expressly found that the evidence in Plaintiff's case had been destroyed, and noted that Plaintiff offered no reasons to believe that the fingerprint evidence would have been retained. (*See* App'x to Compl., docket #1-1, Page ID#14.) Plaintiff is barred from relitigating the availability of the evidence in this Court. "Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering states." *See Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80-82 (1984) (citing the Full Faith and Credit statute, 28 U.S.C. § 1738). "The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of

action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004) (citing *Sewell v. Clean Cut Mgt., Inc.*, 463 Mich. 569, 575, 621 N.W.2d 222 (2001)). Michigan "has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*

In the instant case, all three prongs are met. The state court unquestionably considered Plaintiff's request for fingerprint evidence on the merits and denied it because, among other reasons, the evidence is no longer available. The state-court action involved the same parties or their privies, and Plaintiff initiated that action. Thus, res judicata applies and Plaintiff is barred from relitigating the state court's conclusion that the evidence is no longer available.

For the foregoing reasons, therefore, Plaintiff's action will be dismissed for failure to state a claim.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Notwithstanding the Court's dismissal of the action, however, the Court concludes that there exists a good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will

assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

       This is a dismissal as described by 28 U.S.C. § 1915(g).

       A Judgment consistent with this Opinion will be entered.


Dated: <u>August 19, 2011</u>                /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    UNITED STATES DISTRICT JUDGE